IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | |
| PATRICIA A. STAIANO, : | MISC. CASE NO.: 00-mp-04 (WB) |
| U.S. TRUSTEE, : | |
| : | |
| PLAINTIFF : | |
| : | |
| vs. : | {**Nature of Proceeding**: United States Trustee's Motion to Reconsider Opinion and Order Dated April 17, 2003 (Doc. #167)} |
| WILLIAM J. SCHLITTLER : | |
| AMERICAN FAIR CREDIT ASSOCIATION : | |
| FRANK PULLANO : | |
| RPO ENTERPRISES, INC. : | |
| H.R.S. HOLDING CORP. : | |
| LARRY J. KUSHNER : | |
| CONSOLIDATED MORTGAGE BUYING GROUP : | |
| CONSOLIDATED MORTGAGE BUYERS : | |
| : | |
| DEFENDANTS : | |

# **OPINION**[1]

Presently before this Court is the *United States Trustee's Motion to Reconsider Opinion and Order Dated April 17, 2003*. For the reasons articulated below, the Motion is denied.

### **BACKGROUND**

On June 26, 2000, the United States Trustee ("UST") filed a nine count complaint against the above-referenced Defendants asserting several causes of action based on § 110 of the Bankruptcy Code ("Code"). In general, the UST alleged that the Defendants utilized the bankruptcy system to further a scheme to defraud homeowners. Trial was held on February 25, 26 and 27, 2002 and June 24, 2002.[2] The UST's evidence was limited to a sample of thirteen

---

[1] Drafted with the assistance of Wendy E. Morris, Law Clerk.

[2] Prior to the trial, HRS Holding Corp., RPO Enterprises and William Schlittler sought bankruptcy relief. This Court ruled on February 25, 2005 that the automatic stay imposed in Mr. Schlittler's bankruptcy did not prevent this Court from assessing any pecuniary penalty or equitable remedy contained in § 110 against him.

[m:\users\cathy\wp8docs\opinions\UST v Schlittler_00-mp-04.wpd]

debtors, from a pool of approximately fifty-three, allegedly affected by this scheme.[3]

This Court issued an Opinion and Order on April 17, 2003 that granted judgment in favor of the UST with respect to Mr. Schlittler and American Fair Credit Association. The UST was denied relief as to the remaining Defendants.

## JURISDICTION

This matter is a core proceeding under 28 U.S.C. § 157(a). This Court has jurisdiction under 28 U.S.C. §§ 157, 1334 and Middle District of Pennsylvania Standing Order Misc. 84-0203 to render this decision.

## DISCUSSION

When confronted with a motion for reconsideration, this Court looks to the case of Fidelity State Bank v. Oles, in which that court wrote:

> A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence. Anderson v. United Auto Workers, 738 F. Supp. 441, 442 (D. Kan. 1990); Taliaferro v. City of Kansas City, 128 F.R.D. 675, 677 (D. Kan. 1989). An improper use of the motion to reconsider "can waste judicial resources and obstruct the efficient administration of justice." United States ex rel. Houck v. Folding Carton Administration Committee, 121 F.R.D. 69, 71 (N.D. Ill. 1988). Thus, a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider. Renfro v. City of Emporia, 732 F. Supp. 1116, 1117 (D. Kan. 1990); Butler v. Sentry Insurance, 640 F. Supp. 806, 812 (N.D. Ill. 1986).

130 B.R. 578, 581 (D. Kan. 1991). A review of the record compels this Court to reaffirm its prior decision and deny the UST's motion.

The UST bases its motion for reconsideration on the alleged failure of the Court to consider its argument that Messrs. Pullano and Kushner's liability under § 110 should be based on the "concert of action theory." In addition, the UST believes this Court committed clear error

---

[3] The UST presented evidence with respect to the following bankruptcy debtors: Carmen Nardone, Sharon Visakay, Emery Thorn, Andrea Ganz, Barbara Michalski, Kenneth Reinhart, Patricia Oleski, Frederick Miller, William McMahon, Victoria McMahon, Genevieve Shemanski, John Shemanski, and Robert Fountain.

in finding that no witness could establish the role Mr. Pullano held in the preparation and filing of the bankruptcy documents at issue.

The "concert of action theory,"[4] as adopted by Pennsylvania's Supreme Court, provides in relevant part that:

> [f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him . . . .

Skipworth by Williams v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997)(citing Restatement (Second) of Torts, § 876(a) (1979)). "Parties are acting in concert when they act in accordance with an agreement to cooperate[—either express or implied—]in a particular line of [tortious] conduct or to accomplish a particular result." Restatement (Second) of Torts § 876 cmt. a (1979). However, "[t]he mere common plan, design or even express agreement is not enough for liability in itself, and there must be acts of a tortious character in carrying it into execution." See id. at cmt. b.

The UST maintains that Messrs. Schlittler, Pullano and Kushner acted in concert, or participated in a common design, to fraudulently generate rental income from unsuspecting homeowners who were facing foreclosure. The common design purportedly included the preparation of bankruptcy documents that violated various provisions of § 110. For support, the UST directs the Court's attention to the un-rebutted testimony of nine witnesses said to lead the Court to the inescapable conclusion that Messrs. Pullano and Kushner acted in concert with Mr. Schlittler in the preparation of the bankruptcy documents at issue and are therefore equally liable under § 110.

---

[4] Although Pennsylvania courts have referred to this concept as the "concert of action" theory or the "concerted action" theory, it is titled as "Persons Acting in Concert" in the Restatement (Second) of Torts. See e.g. Skipworth by Williams, infra—*concert of action*; Burnside v. Abbott Lab., 505 A.2d 973 (Pa. Super. Ct. 1985)—*concerted action*; Restatement (Second) of Torts § 876.

To resolve the UST's motion, the Court must ask itself this question: Can this Court conclude, based on the present record, that either Messrs. Kushner or Pullano can be labeled as a "bankruptcy petition preparer" with respect to the offensive bankruptcy documents at issue? This Court's answer still remains "No."

The UST relies on admissions Mr. Schlittler made in a prior proceeding before this Court concerning his activities as a bankruptcy petition preparer. Mr. Schlittler repeatedly testified that the "home office" directed him to engage in certain behavior with respect to filing bankruptcy petitions or that the "home office" had provided him with the blank bankruptcy petitions. He had also, on occasion, instructed disgruntled clients to contact Mr. Pullano.

The UST has somehow equated "home office" to mean Messrs. Pullano and Kushner since they were the only individuals Mr. Schlittler identified with the "home office." The Court finds fault with this conclusion. At no time during Mr. Schlittler's testimony did he indicate that either Messrs. Pullano or Kushner were in charge of the "home office" or that they—either individually or collectively—instructed him on the preparation of the bankruptcy documents at issue. In addition, the Court fails to see how Mr. Schlittler's referral of disgruntled clients to Mr. Pullano establishes in any way that his actions, with respect to the offending bankruptcy petitions, were controlled by Mr. Pullano.

The UST also relies on the un-rebutted testimony of a former HRS representative, Ms. Lehman, for additional proof. However, the Court is not convinced that Ms. Lehman's testimony advances the UST's cause of action.

Ms. Lehman testified that she had attended a Homeowners Rescue Service ("HRS") seminar where Messrs. Kushner and Pullano spoke. She vaguely remembered Mr. Kushner instructing the attendees "on how to talk to clients in regards to bankruptcy and why we were filing the bankruptcy or the petition." See Transcript of 6/24/02 at 27, lines 11-14. She also

testified to receiving faxed correspondence from Mr. Kushner's assistant, Janet Castro. One letter, which concerned an inquiry into what steps the representatives were going to take with respect to specific upcoming sheriff sales, was also addressed to Mr. Schlittler.[5] In another letter from Ms. Castro, Ms. Lehman understood Ms. Castro's statement "I am faxing this memo to you as a reminder to see that these sales are taken care of" to mean that she had "[t]o make sure that they file a petition to stop the sheriff's sale." See id. at 30, lines 20-21, 23-24. Ms. Lehman also testified to receiving a blank bankruptcy form by facsimile from Ms. Castro. It was Ms. Lehman's practice to give this form to certain clients so that they could file for bankruptcy on their own. In addition to providing these clients with a blank form, she testified that she also provided them with a completed "John Doe" bankruptcy petition that she had received from HRS.

Ms. Lehman also had written communications with Mr. Pullano. One particular letter concerned Ray Mardis, one of her clients. Ms. Lehman interpreted the content of Mr. Pullano's letter to mean that she was to explain to Mr. Mardis that his creditors may "attack all his other assets and income" if he did not file a bankruptcy to stop the next foreclosure sale. See id. at 33, lines 6-16. She later received a letter from Ms. Castro that instructed her to have Mr. Mardis "sign a whole bunch of blank petitions," sans date. See id. at 35, lines 6-19. Ms. Lehman added that the date would be written in later either by herself or HRS depending upon who was going to file the document for the client.

On a separate occasion, Mr. Pullano instructed Ms. Lehman, in a letter, to have several clients file for bankruptcy in response to their upcoming sheriff sales.

Although Ms. Lehman's testimony reveals that Mr. Pullano may have provided

---

[5] In this letter, "Story" is the only client listed under Mr. Schlitter's name. The UST presented no evidence concerning this client during the trial.

assistance with the preparation of certain bankruptcy petitions, she did not provide any evidence that would suggest that either Messrs. Pullano or Kushner, directly or indirectly, prepared any of the offending bankruptcy documents *at issue* or that she had personal knowledge of the assistance or instruction that either individual provided to Mr. Schlittler in his preparation of the offending documents *currently at issue*. Just because there is evidence that either Messrs. Pullano or Kushner may have had a direct hand in causing the preparation and filing of bankruptcy documents for certain clients, it does not logically lead to a conclusion that either had any influence in preparing and filing the bankruptcy documents under consideration. This Court is not prepared to leap to this conclusion.

Ms. Lehman's testimony constantly refers to the elusive "they" that is so often used in conversations. This "they" often directed her actions with respect to the drafting of bankruptcy petitions. There was no evidence to indicate that Ms. Castro's instructions to Ms. Lehman were at the behest of Mr. Kushner or Mr. Pullano and that these instructions resulted in Mr. Schlittler's preparation of the bankruptcy documents currently at issue. This Court is not prepared to conclude that Ms. Lehman's testimony somehow evidences the level or type of control Messrs. Pullano or Kushner had over Mr. Schlittler's preparation of the offensive documents.

Likewise, the Court fails to find that the testimony elicited from former HRS clients establishes either the control or influence Messrs. Pullano or Kushner had on the preparation of the bankruptcy documents at issue.

Nothing in the record indicates that either Mr. Pullano or Kushner: (1) directly prepared the *bankruptcy documents at issue*; (2) assisted Mr. Schlittler or a third party in the preparation of the *bankruptcy documents at issue*; or (3) instructed Mr. Schlittler or a third party on the preparation and filing of the *bankruptcy documents at issue*.

[m:\users\cathy\wp8docs\opinions\UST v Schlittler_00-mp-04.wpd]    6

Case 5:00-mp-00004-JJT    Doc 3    Filed 04/14/05    Entered 04/14/05 14:46:25    Desc
Main Document    Page 6 of 7

Irrespective of the fact that the evidence proffered by the UST was un-rebutted, it falls short of establishing that either Mr. Kushner or Mr. Pullano are liable under § 110. As previously stated in the Opinion issued on April 17, 2003, there is no support for a finding that either Messrs. Pullano or Kushner acted as bankruptcy petition preparers in violation of § 110. The UST's reliance on the "concert of action theory" is in furtherance of its allegation that the Defendants collectively violated provisions of § 110. The testimony and documentary evidence presented from the witnesses fails to establish that Messrs. Schlittler, Pullano and Kushner were acting in accordance with an agreement, either expressed or implied, to cooperate in the preparation of bankruptcy documents for these filings. Absent the establishment of this factor, this Court cannot determine that either Messrs. Pullano or Kushner violated provisions of § 110. The UST's Motion is denied.

An Order will follow.

Date: April 14, 2005

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　John J. Thomas, Bankruptcy Judge
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(CMS)
*This electronic order is signed and filed on the same date.*